**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**BOBBIE KNAPP,**

**Plaintiff,**

**vs.**

**Civil Action 2:10-CV-388**
**Judge Watson**
**Magistrate Judge King**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

**REPORT AND RECOMMENDATION**

This is an action instituted under the provisions of 42 U.S.C. §405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for disability insurance benefits and supplemental security income. This matter is now before the Court on plaintiff's *Statement of Specific Errors*, Doc. No. 11, and the Commissioner's *Memorandum in Opposition*, Doc. No. 15.

**I**

Plaintiff Bobbie Knapp filed her current applications for benefits on March 10, 2006,[1] alleging that she has been disabled since September 15, 2005 as a result of physical and mental impairments. The applications were denied initially and on reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

On March 4, 2009, plaintiff, represented by counsel, appeared and testified at the administrative hearing, as did Barry Brown, who testified as a vocational expert. In a decision dated March 19, 2009,

[1]Earlier applications for benefits were denied and plaintiff did not pursue those applications.

the administrative law judge found that, although plaintiff suffers severe physical and mental impairments, including borderline intellectual functioning, plaintiff's impairments neither meet nor equal a listed impairment and permit the performance by her of a reduced range of light work. Although that residual functional capacity precludes the performance of plaintiff's past relevant work, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff can perform a significant number of jobs in the national economy despite her impairments. The administrative law judge therefore concluded that plaintiff is not disabled within the meaning of the Social Security Act. A.R. 28-47. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on March 12, 2010. A.R. 17-19.[2]

**II**

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs*., 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this

---

[2]The Appeals Council thereafter declined plaintiff's invitation to reopen that decision in light of the grant of plaintiff's subsequent claims for benefits. A.R. 4-5.

Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.,* 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

The single issue presented in plaintiff's *Statement of Specific Errors* addresses only the finding of the administrative law judge that plaintiff's mental impairment neither meets nor equals the Listing that addresses mental retardation. The administrative law judge found that plaintiff suffers from borderline intellectual functioning; plaintiff contends that she has met Listing 12.05, which requires, under appropriate circumstances, a finding of disability based on the claimant's mental retardation:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when . . .
> (C) [The claimant has demonstrated] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.05(C). A claimant must establish three elements in order to satisfy Listing 12.05(C): that she experiences "significantly subaverage general intellectual functioning with deficits in adaptive function [that] initially manifested during the developmental period" (*i.e.*, the diagnostic description); (2)that she has a "valid verbal, performance, or full scale IQ of 60 through 70;" and (3)

that she suffers from "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id*. *See also Foster v. Harris,* 279 F.3d 348, 354-55(6th Cir. 2001).

**III**

Plaintiff was 36 years of age at the time the administrative law judge issued his decision. She testified that she has an eighth grade education in Special Education. A.R. 621.[3] She has difficulty reading and writing. A.R. 622. Plaintiff secured a drivers license, but took the test orally. A.R. 623. According to the vocational expert, plaintiff has prior relevant work experience as a housekeeper, a cleaner, a security guard, a stock clerk, a hospital cleaner, and a warehouse worker. A.R. 651. Her jobs as a security guard and as a stock clerk were characterized by the vocational expert as semiskilled. *Id*. Plaintiff testified at the administrative hearing that she lives with her fiancé, she cooks for the family, goes grocery shopping, cleans the house, does laundry, watches TV and cares for her cat. A.R. 647-48.[4]

In June 2005, plaintiff underwent a psychological evaluation by Jayne Speicher-Bocija, Ph.D., at the request of the state agency. On the WAIS-III, plaintiff achieved a verbal IQ score of 66 and a full scale IQ score of 70, which the examiner placed in "the extremely low range." A.R. 277, 279. Plaintiff's performance IQ score of 80 fell in "the borderline range." A.R. 278. On the WMS-III, plaintiff obtained an immediate memory index of 76, a general memory index of 67 and a working memory index of 69. A.R. 278. She read at the 4.1 grade equivalent level. *Id*. The examiner explained that she did not diagnose mild mental retardation because she had no information regarding plaintiff's

---

[3]Plaintiff reported to one consultative psychologist that she completed the ninth grade. A.R. 391.

[4]Plaintiff also testified that her ability to perform some of these functions is limited by her physical impairments. A.R. 647.

intellectual functioning prior to age 18. Moreover, according to the examiner, plaintiff's "functioning appears to be similar to individuals functioning in the borderline range." A.R. 279.

In July 2006, plaintiff underwent another psychological examination in connection with her applications for benefits. Scott Lewis Donaldson, Ph.D., reported that on the WAIS-III, plaintiff achieved a verbal IQ score of 73, a performance IQ score of 78 and a full-scale IQ score of 74, which placed plaintiff in the borderline range of intellectual functioning. A.R. 393. On the WRAT4, plaintiff performed at the 3rd and 4th grade levels. A.R. 394. Dr. Donaldson diagnosed borderline intellectual functioning. *Id.*

That same month, a state agency psychologist reviewed the evidence of record and opined that plaintiff's borderline intellectual functioning neither met nor equaled Listing 12/05(C). A.R. 404.[5]

**IV**

Plaintiff contends that, because she obtained IQ scores between 60 and 70 on the testing administered by Dr. Speicher-Bocija, and because the administrative law judge also found that plaintiff suffers from additional severe impairments,[6] Listing 12.05(C) mandates a finding of disability.

The administrative law judge found that plaintiff suffers from borderline intellectual functioning rather than mental retardation.

> . . .[T]he claimant has IQ scores above 70. While earlier IQ testing, performed prior to the

---

[5]The Court has recounted only that evidence of record relevant to the issue presented in plaintiff's *Statement of Specific Errors.*

[6]In his decision, the administrative law judge also found that plaintiff suffers the severe impairments of chronic obstructive pulmonary disease, rotator cuff peritendinitis of the right shoulder, lumbago, borderline intellectual functioning and affective disorder. A.R. 30. The administrative law judge therefore erred in finding, *see* A.R. 40, that plaintiff's condition does not meet Listing 12.05(C) because "she does not have any other physical or mental impairment that imposes significant work-related functioning."

> claimant’s alleged onset date, shows verbal, performance and ful-scale IQ scores of 66, 80 and 70 respectively, the examining psychologist found that the claimant only had borderline intelligence.

A.R. 40. Plaintiff argues that the administrative law judge improperly required a formal diagnosis of mental retardation: “The actual testing does not conclude the test is invalid, rather it states that while Plaintiff was cooperative with the testing, and maintained good attention and concentration throughout the evaluation, there was still a significant difference between [plaintiff’s] Verbal and Performance IQ.” *Statement of Specific Errors*, p.6.

Plaintiff’s arguments in this regard fail to consider that the Listing requires not only a qualifying IQ score, but also evidence of actual mental retardation – *i.e.*, “significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period. . . .” Listing 12.05(C); *Foster*, 279 F.3d at 355. The administrative law judge relied on the diagnoses of the consultative psychological examiners to find that plaintiff suffers, not from mental retardation, but from borderline intellectual functioning.

There is substantial support in the record for the finding of the administrative law judge in this regard. Both consultative examining psychologists opined that plaintiff suffers from borderline intellectual functioning, notwithstanding her low IQ scores. Indeed, Dr. Speicher-Bocija, upon whose testing plaintiff relies, not only diagnosed borderline intellectual functioning, but commented that plaintiff’s “functioning appears to be similar to individuals functioning in the borderline range.” A.R. 279. Moreover, the vocational expert testified that certain of plaintiff’s prior relevant work was semiskilled. A.R. 651. The finding of the administrative law judge that plaintiff does not

suffer from mental retardation within the meaning of Listing 12.05(C) enjoys substantial support in the record.

It is therefore **RECOMMENDED** that the decision of the Commissioner of Social Security be affirmed and that this action be dismissed.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

*s/Norah McCann King*
Norah McCann King
United States Magistrate Judge

Date: July 21, 2011